UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN C. FUSTOLO<br>*Plaintiff*<br><br>v.<br><br>SELECT PORTFOLIO SERVICING, INC.<br>AND FEDERAL HOME LOAN MORTGAGE<br>CORP. AS TRUSTEE OF SCRT 2019-2<br>*Defendants* | C.A. NO. 1:23-CV-10033-RGS<br><br><br>**PLAINTIFF'S OPPOSITION<br>TO MOTION TO DISMISS** |

### INTRODUCTION

Defendants' Motion to Dismiss should be denied because Fustolo's allegations in his First Amended Complaint state valid claims sufficient to satisfy the requirements of Rule 12(b)(6). *First*, judicial estoppel does not bar these claims because the bankruptcy was filed against Fustolo involuntarily, he received no discharge, never surrendered the property, and remains personally liable for the mortgage debt. *Second*, the mortgage assignments are invalid because they were executed by an entity that had filed its dissolution with the Secretary of the Commonwealth a year and a half earlier, making them void, rather than merely voidable, under established law. *Third*, the promissory note is unenforceable by Defendants because it is still held by HSBC Mortgage Corporation (USA), not the Defendants or their representatives. *Fourth*, the notice required under Paragraph 22 of Fustolo's mortgage was not sent in accordance with the strict compliance required under black-letter precedent, and acquiescence to the Defendants' multi-notice strategy would lead to further confusion and chaos during the foreclosure process.

1

*Fifth*, refusing to accurately value Fustolo's property not only falls within RESPA because it an error that "relat[es] to" the servicing of the loan, and it is also a key factor in most loss-mitigation applications. *Sixth*, Defendants' repeated false publications about being owed the mortgage and note (when they are entitled to enforce neither) constitute defamation per quod, defamation per se (because Fustolo is a CPA), and slander of title. *Finally*, all of these practices described throughout the First Amended Complaint are within the penumbra of established standards of unfairness and deceptiveness, violating both M.G.L. ch. 93A and M.G.L. ch. 93, § 49.

## STANDARD FOR DISMISSAL UNDER RULE 12(b)(6)

The short and plain statement required by Fed. R. Civ. P. 8(a)(2) must "possess enough heft to 'show that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (internal quotations omitted). The Court should accept as true the factual allegations in Fustolo's Verified First Amended Complaint ("FAC"), and must make all reasonable inferences in his favor. *Rivera v. Rhode Island*, 402 F.3d 27, 33 (1st Cir. 2005). Fustolo's FAC is plausible on its face to the extent he has "plead[ed] factual content that allows the court to draw a reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ascroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). The inquiry focuses on "the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

## ARGUMENT

**I.     Judicial Estoppel is Inapplicable Because Fustolo Did Not Secure a Favorable Decision in His Involuntary Bankruptcy, Nor Has He Obtained any Advantage.**

Defendants argue that the doctrine of judicial estoppel bars Fustolo from raising his present claims. (Defs' Br. at 5-6.) To be clear, however, Fustolo did not himself file for the bankruptcy referenced by Defendants. The bankruptcy was *involuntary*, filed by three creditors pursuant to 11 U.S.C. § 303. (Defs' Ex. A, Docket, ECF Doc. No. 1.) Moreover, Fustolo was denied a discharge, preventing him from eliminating the debts in question in the bankruptcy. (Defs' Ex. A, Docket, ECF Doc. No. 391.) The bankruptcy, such as it is, failed to provide Fustolo with the any of the benefits normally associated with bankruptcy, such as debt relief. Unlike debtors who obtain a discharge of their personal liability, Fustolo is still liable under the mortgage and note at issue and consequently did not surrender the property in the bankruptcy.

Judicial estoppel is an equitable doctrine invoked by a court at its discretion. *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 30 (1st Cir. 2004) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). It is "widely agreed" that, at a minimum, two conditions must be satisfied before judicial estoppel can attach. *Alt. Sys. Concepts*, 374 F.3d at 33. First, the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive. *Id.* (citing *Faigin v. Kelly*, 184 F.3d 67, 82 (1st Cir. 1999)). Second, the asserting party must have succeeded in persuading a court to accept its prior position. *Id.* (citing *Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 13 (1st Cir. 1999)). In a prototypical case, judicial estoppel applies when "a party has adopted one position, secured a favorable decision, and then taken a contradictory position in search of legal advantage." *Intergen N.V. v. Grina*, 344 F.3d 134, 144 (1st Cir. 2003). Even if the elements for judicial estoppel are met, "a judge may decline to apply judicial estoppel

3

where it is not appropriate to serve the doctrine's purpose, which is to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system." *Guay v. Burack*, 677 F.3d 10 (1st Cir. 2012).

None of the cases cited by Defendants stands for the proposition that it follows from the mere filing of a statement of intention in an involuntary bankruptcy that the doctrine of judicial estoppel applies in an involuntary bankruptcy where a debtor-plaintiff was denied a discharge. In *In re: Schiavone*, 2016 WL 7496166, 24 LCR 798 (Mass. Land Ct. Dec. 20, 2016), cited by Defendants, the pro se plaintiff had filed a voluntary bankruptcy, a statement of intention, and, received a discharge. Likewise, in *Souza v. Bank of Am.*, No. 1:13-cv-10181-PBS, 2013 U.S. Dist. LEXIS 94663 at *7 (D. Mass. July 8, 2013), the court's grant of the defendant-bank's motion to dismiss was because the claimant had been granted a discharge in connection with her surrender of the property. *See also Pacia v. Deutsche Bank Nat'l Tr. Co.*, No. 1:22-CV-0014-MSM-PAS, 2022 U.S. Dist. LEXIS 207720 (D.R.I. Nov. 16, 2022) ("the advantage that [the plaintiff] derived [with respect to the elements of judicial estoppel] from surrendering the Property was that the bankruptcy court discharged."). Indeed, in *Ibanez v. U.S. Bank Nat'l Ass'n*, the SJC held that the doctrine of judicial estoppel prevents a mortgagor from challenging the foreclosure of the same property "that he surrendered in the Bankruptcy Court *in exchange for the discharge of his debts*." 856 F. Supp. 2d 273, 275 (D. Mass. 2012) (emphasis added).

Here, the elements of judicial estoppel are not met. Fustolo did not succeed in his bankruptcy in any sense – he never surrendered the property with the Bankruptcy Court, his discharge was denied, and his debt to the Defendants was never eliminated. The Statement of Intention is not signed under penalty of perjury, and its legal effect has been described as "so

4

enigmatic … that the most that can be said in its defense is that the Congress settled upon a calculated ambiguity to resolve an intractable difference of opinion." *Everbank v. Chacon*, 2017 Mass. App. Unpub. LEXIS 761 (Mass. App. 2017) (quoting *In re Kasper*, 309 B.R. 82, 89 (Bankr. D. D.C. 2004)). Judicial estoppel is inapplicable because despite the bankruptcy, both Fustolo and the Defendants are in exactly the same position they were prior to the involuntary filing of that matter, as he is still obligated under the note and the related mortgage. Defendants are unable to point to any benefits he derived from the bankruptcy filing, and there is no risk of any inconsistent holdings.

## II.     The Mortgage Assignment and the Promissory Note Indorsement are Void.

### A. The Mortgage Assignments Are Void Because They Were Executed on Behalf of an Entity That Ceased to Exist Nearly One-and-a-Half Years Earlier.

Defendants' misconstrue Fustolo's claims. He does not claim that the chain of assignments – on paper – is not complete, nor does he challenge the legal capacity of MERS to assign mortgages. The claim here is that the first mortgage assignment was void because it was assigned by a company that had ceased its legal existence long before the purported assignment was executed. While the first and second mortgage assignments were dated December 7, 2011 and August 3, 2012, respectively (the second being a corrective assignment of the first), the assignor, Union Capital, had been terminated by filing a Termination of Trust with the Secretary of the Commonwealth on June 29, 2010. Moreover, Union Capital's trustee, UCM, LLC, who purported to execute the documents, had filed a Certificate of Cancellation on June 30, 2010. (Compl. ¶¶ 12-14, Exs. 9-10.) Union Capital had already *ceased to exist for nearly a year and a half* before the first assignment, and two years before the second assignment.

The effect of these assignments is void under what is now well-established case law. As

stated by the First Circuit in *Culhane v. Aurora Loan Servs. of Neb.*, "a mortgagor has standing to challenge a mortgage assignment as invalid, ineffective, or void (if, say, the assignor had nothing to assign or had no authority to make an assignment to a particular assignee)." 708 F.3d 282, 291 (1st Cir. 2013) (emphasis added). Void assignments, i.e., those performed with no authority to do so, "are of no effect whatsoever; such as are a mere nullity, and incapable of confirmation or ratification." *Wilson v. HSBC Mortg. Servs.*, 744 F.3d 1, 9 (1st Cir. 2014), quoting *Allis v. Billings*, 47 Mass. 415, 417 (1843) (quotation omitted).

An assignment is void where it is not signed by an officer of the owner of the mortgage. M.G.L. ch. 183, § 54B; *Bank of N.Y. Mellon Corp. v. Wain*, 85 Mass. App. Ct. 498, 503, 11 N.E.3d 633 (2014). A mortgage assignment is effective to pass legal title and "cannot be shown to be void" where it is (1) made by the mortgage holder or its representative, (2) executed before a notary public, and (3) signed by an authorized employee of the mortgage holder. *Id.* Here, the first and third of these did not occur.

To be clear, this is not an *ultra vires* assignment that is merely voidable and has the possibility of being ratified later. The signer of the First and Second Assignments (Compl. Exs. 3-4.) was not an authorized employee of the mortgage holder, Union Capital, for the plain reason that *there was no such company as Union Capital in existence on whose behalf to sign*. On Defendants' logic, anyone could sign a purported assignment on behalf of anyone else, record it in the registry, and it could never be challenged.

That is largely what happened here – despite the fact that there was no trust named Union Capital was in existence, and, moreover, no trustee named UCM, LLC was in existence, either, an assignment was signed on their behalf by a self-proclaimed trustee. Defendants'

argument is an invitation to widespread, irreparable fraud, premised on allowing lenders to play fast and loose with title to borrowers' real estate. Logic dictates that if an entity ceases to exist, there is no one authorized to sign on its behalf. As held in *Sullivan v. Kondaur Capital Corp.*, 85 Mass. App. Ct 202, 7 N.E.3d 1113 (2014), a "purported foreclosure [is] void by reason of [the mortgagee's] lack of legal authority to conduct it." Cf. *Willson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 10 (1st Cir. 2014) (mortgage not void, merely voidable, where a corporate officer "acts beyond the scope of his authority" because those acts, though not authorized, "legally could be ratified" by the corporation). Here, in contrast, the acts in question are void because there is no corporation – because it has dissolved – that could ratify the void assignments. The Supreme Judicial Court has clearly stated that "[a]ny effort to foreclose by a party lacking jurisdiction and authority to carry out a foreclosure under these statutes is void." *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 941 N.E.2d 40, 50 (Mass. 2011) (internal quotation marks omitted). Such is the case here, and Defendants' motion to dismiss this count should be denied.

### B. The Note is Held by HSBC Mortgage Corporation (USA), not Freddie Mac.

The promissory note presents additional problems for the Defendants. Though Defendants correctly state that the unity of the mortgage and note needs only to be established at the time of foreclosure, not before, *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 352 (1st Cir. 2013), no unity exists here even if the mortgage assignments are valid (which they are not, as stated above in Section II.A).

While the chain of mortgage assignments ended with Freddie Mac, the chain of note assignments and indorsements ended with HSBC Mortgage Corporation (USA). There is no unity of the mortgage and the note, with the mortgage purportedly being held by the Defendant

7

and the note held by HSBC Mortgage Corporation (USA), a company no longer even registered to do business in Massachusetts. (FAC ¶ 26.)

There is no indication that the note is held by anyone other than HSBC Mortgage Corporation (USA), nor is there any indication that Defendants are acting on behalf of HSBC Mortgage Corporation (USA). Massachusetts law "definitively concludes that only a mortgagee who also holds the note or is servicing the loan on behalf of the note holder may foreclose." *Culhane* at 364. As with the mortgage, the note is unenforceable by Defendants.

### III. The Letters Sent to Fustolo Do Not Strictly Comply With the Requirements of Paragraph 22 of Fustolo's Mortgage.

Certain pre-foreclosure disclosures are required in the 90-day notice required under M.G.L. ch. 244, § 35A, the form of which is prescribed by 209 C.M.R. §§ 56.03-04. These disclosures overlap – in part – with the additional disclosures required in the notice under Paragraph 22 of Fustolo's mortgage, the standard mortgage form used in Massachusetts (the "Paragraph 22 Notice"). The disclosure at issue here, though, is one that is required *only* in the Paragraph 22 Notice: the homeowner must be told of his "right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and sale." [1]

---

[1] The complete Paragraph 22 is reproduced below, with emphasis added:

> 22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to the Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified may result in acceleration of the sums secured by the Security Instrument and sale of the Property. **The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.** If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate full payment of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. ….

In a creative attempt to try to comply with both of these requirements simultaneously, SPS sent two separate letters to Fustolo on the same date. (FAC, Ex. 20.) The first letter follows the prescribed format under M.G.L. ch. 244, § 35A and 209 C.M.R. §§ 56.03-04 ("the 90-Day Notice"), and on the last page says "Enclosed with this notice there may be additional important disclosures…." Yet the 90-Day Notice does not expressly incorporate the additional letter by reference, nor does it even state unequivocally that a letter shall be enclosed, instead using the language "may be" disclosures.

The second, untitled, letter ("the Letter"), is comprised of three single-paced pages of text, and includes at the very bottom of the second page the Paragraph 22 requirement of the "right to bring a court action" language.

Neither letter complies strictly with Paragraph 22, and foreclosure therefore is prohibited. "[O]ne who sells under a power of sale must follow strictly its terms. If he fails to do that there is no valid execution of the power, and the sale is wholly void." *Moore v. Dick*, 187 Mass. 207, 211, 72 N.E. 967 (1905). Paragraph 22 of Fustolo's notice clearly states what must be sent out in "the notice" to him for a valid for closure to occur. Here there is no single "notice" that sets forth all the requirements of Paragraph 22.

Strict compliance with all the terms is required, and if a lender "fails to do so there is no valid execution of the power, and the sale is wholly void." *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 649-650 (2010), quoting *Moore v. Dick*, 187 Mass. at 211. This requirement applies, in particular to notices related to the default provision in Paragraph 22. *Pinti v. Emigrant Mortg. Co.*, 472 Mass. 226 at 232 ("strict adherence to the notice of default provisions in [in Paragraph 22 of the mortgage] was required.").

9

The Western Division Housing Court addressed this issue in *Towd Point Mortg. Trust v. Cruz*, No. 19H79SP005472, 8 W. Div. H. Ct. 116 (Mar. 11, 2021) (Winik, J.),[2] where the same mortgage service, SPS, also sent multiple notices purporting to comply – but only if they are combined with each other – with Paragraph 22. The court in *Towd* held that "as a matter of law that the two documents cannot be viewed as one integrated default/right to cure notice to comply strictly with Paragraph 22 of [the] mortgage." *Id.* at 125.

There are multiple reasons for this conclusion. The plain language of Paragraph 22 uses the term "the notice" – rather than language such as, perhaps, "multiple notices" or "any combination of notices" as seems to be implied by the Defendants to be acceptable. Words of a contract should be interpreted according to their "plain meaning," *Bailey v. Astra Tech, Inc.*, 84 Mass. App. Ct. 590, 594, 999 N.E.2d 138 (2013), which implies that the singular should not be made the plural, and vice versa.

Furthermore, the first paragraph of the Letter states that "in the event of any conflict between the terms of this letter and those contained in the 90 Day Notice, the terms of the 90 Day Notice will control." The *Towd* court pointed out that it would be unreasonable to expect that a homeowner of average intelligence would have the ability to determine whether or not any provisions of the Letter conflict with the 90-Day Notice. "*Pinti* teaches us that it is the responsibility of the mortgagee/lender to set up the information required by ¶ 22 of the mortgage with clarity and precision in one default/right to cure notice." *Towd* at 126.

Strict compliance with the terms of the mortgage is an explicit prerequisite to exercising the statutory power of sale under M.G.L. ch. 183, § 21 (foreclosure only permitted after "first

---

[2] Attached as the Appendix.

complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale"). Strict compliance with all the terms is required, and if a lender "fails to do so there is no valid execution of the power, and the sale is wholly void." *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 649-650 (2010), quoting *Moore v. Dick*, 187 Mass. 207, 211 (1905). This requirement applies, in particular to notices related to the default provision in Paragraph 22. *Pinti*, 476 Mass. at 232, ("strict adherence to the notice of default provisions in [in Paragraph 22 of the mortgage] was required.").

Sending two separate compliant notices, one 90-Day Notice and one Paragraph 22 Notice, would have been simple. In fact, right now the Defendants could send new notices to Fustolo and then, after the appropriate time, move forward with foreclosure. They have chosen not to – instead, Defendants have elected to press the argument that these two contradictory, confusing letters strictly comply with one of the bedrock protections of homeownership, the only protections available in a Commonwealth like Massachusetts that allows foreclosure without judicial process. By Defendants' reasoning, the disclosures could be separated into even more notices – three or four or even five letters – which, combined, might provide a discerning real estate attorney with sufficient notice. That, however, would not be "strict compliance," nor are the letters here.

**IV. RESPA is Applicable Because the Dispute is Subject to That Act Under the Catch-All at 12 C.F.R. § 1024.35(b)(11), and Because Loan Modifications Generally Consider the Property's Valuation.**

In their motion, SPS argues that Fustolo's dispute about the incorrect valuation of his property value is not a "covered error" under RESPA, 12 U.S.C. § 1024.35. In support of its contention, SPS cites a case in which the borrower's allegation that the dispute of a loan loss-

mitigation decision was determined not to be one of the "covered errors" enumerated at 12 C.F.R. § 1024.35(b). *Canty v. Wells Fargo Bank, N.A.*, 463 F. Supp. 3d 57 (D. Mass. 2020).

What *Canty* did not take into consideration, however, is the catch-all section of 1024.35(b)(11), which covers that "[a]ny other error relating to the servicing of a borrower's mortgage loan."

The Fourth Circuit examined this language in *Naimoli v. Ocwen Loan Servicing, LLC*, 22 F.4th 376 (2d Cir. 2022), holding conclusively that the broad language used in RESPA "any other error relating to the servicing" – permits standing under RESPA, as here:

> Both "any" and "relating to" are capacious terms. By way of comparison, the regulation does not limit the catch-all provision's application to errors "in" the servicing of a consumer loan, which would mean that only errors directly involved with loan servicing would be covered. Instead, the regulation utilizes the broad term "relating to." We read this to mean that any error that has some connection with or pertains to loan servicing is covered (except of course where the regulation specifically excludes an error). *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (noting that the "ordinary meaning" of "relating to" is "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with"). … We conclude that [Plaintiff's] NOE [notice of error] "relates to" the servicing of her loan.

*Naimoli*, 22 F.4th at 383-84.

Reinforcing this conclusion are the CFPB's own examples of exceptions to the regulation. The errors that are not covered are in an altogether different category, stated in the CFPB's Official Commentary of 12 C.F.R. § 1024.35(b), which lists non-covered errors related to loan origination and lending, rather than servicing activity.[3] These guidelines are conclusive. *Bureau of*

---

[3] The Official Commentary states that the noncovered errors include:

    i. An error relating to the origination of a mortgage loan;
    ii. An error relating to the underwriting of a mortgage loan;
    iii. An error relating to a subsequent sale or securitization of a mortgage loan;
    iv. An error relating to a determination to sell, assign, or transfer the servicing of a mortgage loan. However, an error relating to the failure to transfer accurately and timely information relating to the

*Consumer Fin. Prot. v. Citizens Bank, N.A.*, 504 F. Supp. 3d 39, 58 (D.R.I. 2020) ("Unless demonstrably irrational, [] staff opinions construing [TILA] or Regulation [Z] [are] dispositive"), quoting *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980). As such, the refusal to accurately calculate the value of Fustolo's property is an error subject to RESPA.

Additionally, SPS argues that SPS's letter, in which it states that "variance in the property value will not change the outcome of our decision" contradicts Fustolo's allegation that the value would have been a factor in offering him future loss-mitigation options. This changes nothing, because SPS's letter restricted its statement only to the "Unemployment Plan," not to any of its other programs for which Fustolo may have been eligible or may have applied for in the future. Fustolo's Notice of Error clearly stated that Fustolo "intends on applying for loss-mitigation options." (FAC, Ex. 14, p. 4.) Regardless of whether the Unemployment Plan was affected by the property value, Fustolo sought to apply for other options because his unemployment had ended. It is generally accepted that property value is a major factor for most loan modifications. For instance, the Net Present Value test used in connection with numerous loan modifications, the industry standard for many years, uses the property value as a major factor. *See*, *e.g.*, M.G.L. ch. 244, § 35B (requiring use of net present value models). Defendant Freddie Mac's public filings with the Securities and Exchange Commission even admit that the "estimated current property value" is one of the factors used when monitoring loans in its portfolio. *See* Freddie Mac Form 10-K, Dec. 31, 2021, p. 70.[4] Notably, SPS has not stated that

---

servicing of a borrower's mortgage loan account to a transferee servicer is an error for purposes of § 1024.35.

*See* Official Interpretation, available at https://www.consumerfinance.gov/rules-policy/regulations/1024/35/#b.
[4] Available at https://www.sec.gov/Archives/edgar/data/1026214/000102621422000031/fmcc-20211231.htm.

property value is *not* a factor used for other modification applications for which Fustolo intended to apply. Should SPS be willing to so affirm, Fustolo would concede this claim.

### V.     Defendants' Statements Were Defamatory Because They Made False Statements About Fustolo.

Defendants' arguments here should be rejected as they are predicated on 1) denying the truth of Fustolo's allegation that Defendants do not hold the mortgage and note, which is inappropriate in a motion under Rule 12(b)(6), *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1 (1st Cir. 2011), and 2) claiming that if Fustolo were delinquent on his loan obligations, *someone* could have published facts about the foreclosure, so Defendants should be able to without repercussion, regardless of whether the debt is owed to them. This goes against well-established law, as explained below.

The elements of a claim for defamation are that 1) the defendant made a statement, concerning the plaintiff, to a third party, 2) the statement could damage the plaintiff's reputation in the community, and 3) the defendant was at fault in making the statement. *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 629-30, 782 N.E.2d 508 (2003). Moreover, a plaintiff is not required to prove economic damages in connection with four specific types of statements: (1) statements that constitute libel; (2) statements that allege that plaintiff committed a crime; (3) statements that allege that plaintiff has certain social diseases; and (4) statements that may prejudice the plaintiff's profession or business. *Id.* Fustolo is a Certified Public Accountant (FAC ¶ 76), so the claims of libel per quod and libel per se are both applicable because allegations of loan defaults would prejudice Fustolo in his profession.

The Court should take the well-pleaded allegations as true in evaluating Defendants' motion. *Ocasio-Hernandez*, 640 F.3d 1. As explained above in Section II, the Defendants do not

14

hold Fustolo's mortgage or his note. Yet, Defendants published untrue statements about owing a defaulted mortgage and loan *to Defendants* in the Suffolk Registry of Deeds, and advertised these statements in the Boston Globe on April 4, 2022. (FAC ¶¶ 72-74.) Regardless of the status of the mortgage and loan, they are not owed to or owned by Defendants, making the statements false.

Defendants knew or should have known these were false – they are major financial institutions whose businesses principally involve documentation to titles of assets like the mortgage and note, but instead of investigating these errors they moved forward with foreclosure despite the fact that these errors were plain from the faces of the documents submitted to the Court. Such negligence falls outside the "customs and practices within" the Defendants' professions. *Appleby v. Daily Hampshire Gazette*, 395 Mass. 32, 37, 478 N.E.2d 721 (1985). Defendants' request to dismiss this count should therefore be denied on claims of both libel per se and libel per quod.

## VI.    Defendants Slandered the Title of Fustolo's Property.

A claim for slander of title involves the defamation of a pecuniary interest of another, and was stated in *Dulgarian v. Stone*, 420 Mass. 843, 652 N.E.2d 603 (1995), as follows:

> One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to the interests of the other having pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity."

*Id.* at 852 (1995), quoting Restatement (Second) of Torts, § 623A. In other words, "to be liable for publishing an injurious falsehood (or slander of title), the party asserting the claim must present affidavits or other documents showing, or tending to show, that the statements made were false and that the publisher acted in reckless disregard of truth or falsity when publishing

them." *Powell v. Stevens*, 17 Mass. L. Rep. 592 (Mass. Sup. Ct. 2004).

The real property at issue is self-evidently pecuniary in nature, and false publication about Fustolo's title to it causes him harm. Again, as stated in Section II, Defendants do not hold the mortgage or note, and as such are not entitled to enforce them. Nevertheless, Defendants published in the Registry of Deeds and in the Boston Globe statements stating that Fustolo had defaulted on debts *to them* and indicating that foreclosure would be conducted *by them*, when this was legally impermissible. A mortgage holder owns equitable title to a property, *Faneuil Investors Group, LP v. Board of Selectmen of Dennis*, 75 Mass. App. Ct. 260, 264 (2009), so by claiming to be owner of mortgage Defendants falsely claimed a right to title (and eventual possession) to his property.

### VII. Chapter 93A and M.G.L. ch. 93, § 49

All of Defendants' actions as described above are unfair and deceptive, in violation of the Massachusetts Consumer Protection Act, M.G.L. ch. 93A ("ch. 93A"). Conduct is unfair if it is: (1) within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596, 321 N.E.2d 915 (1975). Conduct is deceptive if it has "a tendency to deceive." *Leardi v. Brown*, 394 Mass. 151, 156, 474 N.E.2d 1094 (1985). Likewise, using the same standards as ch. 93A, M.G.L. ch. 93, § 49 prohibits a creditor from any collection that is "unfair, deceptive or unreasonable."

Defendants' act of wrongful foreclosure constitutes a violation of ch. 93A. Massachusetts jurisprudence recognizes that acts of wrongful foreclosure sound under the auspices of ch. 93A. *Kattar v. Demoulas*, 433 Mass. 1, 12, 739 N.E.2d 246 (2000). Motive is irrelevant to a claim under

16

this act. *Id.* Defendants' conduct is unfair because it violates established prerequisites to foreclosure, and deceptive because Defendants have repeatedly represented to Fustolo that they are entitled to foreclose when they are not.

A violation of a federal consumer-protection law like RESPA is a per se violation of ch. 93A, as well. *Nosek v. Ameriquest Mortg. Co. (In re Nosek)*, 363 B.R. 643, 647 (Bankr. D. Mass. 2007) ("Under Massachusetts law, a violation of a federal consumer protection statute is a per se violation of Chapter 93A"), citing 940 Code Mass. Regs. § 3.16(4); *Saade v. Sec. Connection Inc.*, 282 F. Supp. 3d 414, 419 (D. Mass. 2017) ("To the extent such practices violated RESPA, they also violated Chapter 93A").

Defendants' misrepresentations about their right to foreclose, and about the slander to Fustolo's title, also meet the requirements for unfairness and deception under ch. 93A. These claims are within the penumbra of established pre-foreclosure requirements. Indeed, defamation has repeatedly been recognized as within the bounds of a ch. 93A claim. *Dulgarian v. Stone*, 420 Mass. 843, 852–53 (1995); *A.F.M. Corp. v. Corp. Aircraft Mgmt.*, 626 F. Supp. 1533, 1551 (D. Mass. 1985); *Houle v. Khoury*, No. CIV.A.94-02174, 1998 WL 52242, at *3 (Mass. Super. Ct. Feb 9, 1998).

Accordingly, Fustolo's claim for violation of ch. 93A and M.G.L. ch. 93, § 49 should not be dismissed.

## CONCLUSION

WHEREFORE, Plaintiff Steven C. Fustolo respectfully requests that the Court deny Defendants' Motion to Dismiss.

Respectfully submitted,

Plaintiff,
Steven C. Fustolo
By counsel,

/s/ *Joe Dye Culik*
Joe Dye Culik (BBO #672665)
DYE CULIK PC
1200 E. Morehead St., Suite 260
Charlotte, NC 28204
(980) 999-3557
(980) 999-3537 (Fax)
jc@dyeculik.com

March 17, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 17, 2023.

/s/ *Joe Dye Culik*
Joe Dye Culik